CALDWELL *v.* ST. LOUIS JOINT STOCK LAND BANK.

4-3054

Opinion delivered July 10, 1933.

*Clinton L. Caldwell, pro se.*

*W. E. Rhea* and *G. B. Segraves,* of St. Louis, for appellee.

KIRBY, J., (after stating the facts). The appellant has also attempted and sought to inject the following questions in this appeal:

(1) The authority of the Federal Farm Loan Board to appoint a receiver for the insolvent land bank.

(2) That the appointment of S. L. Cantley as receiver was not proved sufficiently.

(3) And that he is appealing from the decree of foreclosure as well as from the decree of confirmation.

(1) The Federal Farm Loan Board had authority to appoint a receiver for the St. Louis Joint Stock Land Bank (2) which could be proved, as was done in this case, by a certified copy of the minutes of the Federal Farm Loan Board duly attested and under its seal showing the appointment of Cantley as receiver. Section 661, title 28, USCA. The St. Louis Joint Stock Land Bank was organized under the provisions of the Federal Farm Loan Act, and was, at the time appellant borrowed the money from the bank and on June 1, 1932, under the supervision

of the Federal Farm Loan Board; and, having failed to pay interest on its bonds on June 1, 1932, the Farm Loan Board declared it insolvent and appointed S. L. Cantley receiver for it, as it was authorized under the law to do. Sections 961-963, title 12, USCA. See also 7 C. J. § 830, p. 845.

(3) The bank had obtained a decree of foreclosure before this receiver was appointed. The sale was advertised by the commissioner as the decree provided, and, no one having bid sufficiently high, the receiver thought it necessary to buy the property in for the trust. The appellant was present at the sale and did not claim it was not fairly conducted. The appeal does not reach to the decree of foreclosure, but relates only to the order confirming the commissioner's sale. The case was submitted on November 22, 1931, and the decree rendered and entered on April 17, 1932, and the transcript was not lodged in the Supreme Court until March 25, 1933, more than 11 months after the decree was entered, and, as the transcript was not lodged here within 6 months after the entry of the decree, nothing but the order confirming the sale can be considered. *Smith* v. *First Nat. Bank of DeWitt,* 119 Ark. 235, 177 S. W. 895.

Appellant offered no proof in support of paragraphs 1 to 11 of his exceptions to the commissioner's report, and the court was justified in confirming the sale, and no question can be raised as to these matters on the appeal.

Appellee filed a demurrer to paragraph 12 of appellant's exceptions to the report of the commissioner, and said demurrer was sustained, and this paragraph stricken out, and the appeal questions the correctness of the chancellor's ruling thereon. Said paragraph 12 of the exceptions charges that the appellee ruthlessly, oppressively and fraudulently aided and contributed to the destruction of the land market in the Osceola district not as a conspirator but as an integral part of the land bank system all chartered and controlled by, operated as a unit by, and, in the event of insolvency, liquidated by, the Federal Farm Loan Board, a government bureau of which the President of the United States is the re-

sponsible head. The 62 Federal and joint stock land banks are government instruments as are their bonds government instrumentalities.

This paragraph also contains a cross section or summary of the pertinent operations of the 62 land banks, the appellee bank included, for the years 1930 and 1931, as shown by the annual reports of the Federal Farm Loan Board, showing the business and operations thereof, the cash collections, the mortgage loans, etc.

Appellant insists that the facts admitted by the demurrer reveal that the Government, in attempting to operate through the land banks ''what is purely a socialistic experiment, has destroyed the country's land market, or, if it be not the prime cause, it has at least materially aided and contributed to its destruction, has sacrificed debtors' farms, at salvage sales rather than judicial sales, for a negligible yield on account of the mortgage debts, has stripped farmers of the means to answer the demands of their stricken creditors, has wrecked the public whose fortunes are linked with both, has impaired local governments dependent on vanishing tax collections, and has impoverished an army of small tax bondholders with local tax treasuries unequal to their burden. With families, paupers and children waifs and consequent impaired citizenship, the vicious cycle can not end in 100 years, if ever.''

He insists that the impairment or loss of value of his lands caused by the operation of the land bank system is indicated by its value on January 1, 1930, alleged under the appraisal to have been $24,000 or $150 per acre. The provisions of the loan act authorizing the loan of $7,000 herein necessarily implied a government appraisal of not less than $14,000 or $87.50 per acre at the date of the mortgage in 1922, while the receiver avers that $23 per acre, for which the land sold, is a fair price for it. ''There is no evidence of its decline in value prior to January 1, 1930, nor is there any other evidence on the subject in the record. These two appraisals by government agencies should be sufficient to measure the very considerable impairment and loss inflicted on ap-

pellant by government land banks, including appellee land bank."

The court did not err in sustaining the demurrer to this exception, which does not admit, of course, any facts that are not well pleaded and the necessary inferences deducible therefrom. There was no testimony introduced tending to show any unfair practice or conduct in the sale of the lands at the time advertised for the sale and at which appellant was present, nor any evidence tending to show that said lands did not bring a fair price, as the chancellor found to be the case. On the whole case, we find no error sufficient to warrant setting aside the sale. The rule has often been declared in such matters and recently. See *Adams* v. *Spillyards, ante* p. 641; *Federal Land Bank* v. *Floyd, ante* p. 616; *Federal Land Bank* v. *Ballentine,* 186 Ark. 141, 52 S. W. (2d) 965.

The decree is affirmed.